Margaret Grignot, Reed Smith for Appellant Bank of America. As your honors are aware, this appeal involves the attorney fees to be awarded to a plaintiff following a settlement in which the parties agreed that the matter would be dismissed but that the plaintiff would be deemed to be the prevailing party for purposes of a single individual cause of action. It's important to note at the outset what this case is not about. Bank of America is not challenging the agreement that it entered into, which is that plaintiff is the prevailing party with respect to the individual claims arising out of the billing error dispute. Bank of America is also not claiming that plaintiff is not entitled to some attorney's fees. Third, Bank of America is not challenging or claiming that proportionality is required as a matter of law in these kinds of cases or that there is some automatic comparison of relief sought as a matter of law. Instead, what Bank of America argues is that plaintiff had the burden to prove, to establish the amount of fees to which he was entitled and that he failed to do that and that the trial court erred in determining what the facts were with respect to the degree of success in this case. $400,000 or almost $400,000 in attorney's fees is unreasonable in light of the demonstrable limited success that the plaintiff achieved in this case. Again, it's important to look at what the plaintiff did not achieve. This was a purely private settlement, not approved by the court. There was no judgment, no consent degree, no certification of a settlement class. No. But that goes to whether he was prevailing party and you just said that he is a prevailing party. So what's the relevance of that? It goes to the degree of success, Your Honor. These are things that could have been achieved but were not achieved by a plaintiff. So not to whether he was the prevailing party but to what he achieved in light of how this case started out. The case started out as a class action with multiple causes of action seeking substantial monetary and injunctive relief from or declaratory relief from Bank of America. But you did agree to do a number of things that would benefit the class. Bank of America agreed to do three things, Your Honor. The first was to provide an affidavit which it did indicating what its current practices were and the effective date of its current written policies. That, in fact, provided no benefit to the class. It was simply a statement of what its policies were. Well, what the policies were as of the date of the settlement. But as I understand it, the plaintiff's argument is that those policies evolved over the course of the litigation and, therefore, that there was success achieved in a sharpening of those policies as a result of the litigation. Your Honor, that is, of course, the plaintiff's argument. However, the plaintiff has the burden to establish the truth of that fact and it is, in fact, not established. There is no evidence that Bank of America's policies changed or evolved over the course of the litigation. And, in fact, all of the evidence is to the contrary. The evidence established by Bank of America is that its policies have always been the same and that this is an isolated incident where the dispute between Bank of America and the United States is not resolved. In a careful look at that expert declaration reveals that the expert declaration has no basis in fact. In other words, the expert declared A, B, and C, but there were no facts to support that. So, for example, the expert said that the settlement was an extraordinary achievement under difficult circumstances. If you read the declaration carefully, you will see that there's not one word of fact to support that so-called opinion. Secondly, he said the goals of the litigation were achieved. Again, he just says that. There's no facts in the declaration to support that, nor are there any facts in the record. He said it provided substantial benefits to plaintiff cardholders and the public. Again, no facts in the declaration or in the record to support that statement. In fact, he said that the substantial benefit arose out of the fact that consumers have better credit reports or credit ratings when disputed facts are noted as disputed. He doesn't tie that in any way to the settlement or indicate that it's in any way affected by the settlement that Bank of America entered into. The settlement agreement also provided no admission of liability. In fact, Bank of America denied liability. There was no evidence of any systemic violations or institutional policies that either were changed or modified as a result of the litigation. What do we do with the fact that we have a district judge who sat through all the litigation and who was of the view that the amount of fees was generated essentially by the style of litigation that ensued? That's essentially what he said. And that the results that were obtained, which included some damages of $1,000 and some changes to the settlement agreement and some non-monetary relief to the individual and some other, at least whether it's a change in position or not change of position, some documentary changes, at least with regard to what was going to be included in manuals and so on. Why isn't that enough in applying an abuse of discretion standard? First, Your Honor, the factual determinations upon which that ruling was based are clearly wrong. There's just no evidence to support... With regard to what? With regard to the degree of success as to... I wasn't trying to describe the degree of success. I was trying to describe simply what was in the settlement. Your Honor, if one looks at what was in the settlement and applies the abuse of discretion standard, it is unreasonable to spend $400,000, more than $400,000. It is unreasonable to award $400,000 for the success that was achieved. As compared to what? As compared to other cases? As compared to... I mean, if in fact this is success of some kind and the way in which the litigation ensued required the expenditure of those fees. So it's success, although... So then how do we say that the degree of success isn't enough? Well, Your Honor, you look at two things. You look at what the plaintiff intended to achieve in the case and whether in fact he achieved that. And the answer to that is unquestionably no. He intended to achieve either a monetary success of a million dollars on one occasion and received $1,000, or he intended to achieve some change in the bank's policy, some significant change in the bank policy. And in fact, Your Honor, what he was really looking for was for the bank to change its policy so that the bank would have to determine by judgment or settlement that disputed amounts were in fact owed to the merchant before it could note those disputed... Could report those disputed matters to the credit reporting agencies. That's not the law. It's never been the law, and Bank of America did not agree to do that. So if you look at what the plaintiff tried to get out of the lawsuit and what he did get, that's the first thing. Didn't you agree to report that they were to the credit agencies that the amounts were disputed? We agreed to report to the credit agencies that this was no longer a negative item on his report, Your Honor. No, no, but I mean in general as to your credit card holders, when there was a disputed amount. No, Your Honor, we didn't agree to it. All we did was provide an affidavit that said that that's what we were doing already. Well, you said that's what you were doing as of whatever the date of the affidavit was. Your Honor, we said in the affidavit that that was our current policy, that the current written policy had been in effect since some date in 05. And there is, there's an affidavit from a Bank of America employee that that did not change our policy, that in effect that was our policy. It did change your practice, at least as far as this plaintiff was concerned, because you didn't do that with him. Your Honor, there's a dispute as to what went on with this plaintiff. This plaintiff claimed to have sent a letter to Bank of America disputing the bank's determination. Bank of America has no record of receiving that letter. So there's nothing in the facts of this case that would indicate that the policy changed from the time of Mr. Moore until now. Presumably, if that was the dispute, it could have been solved in five minutes at the beginning of the litigation. Yes, Your Honor. That's been our position all along. Except that it wasn't solved, because I gather that the Bank of America did not agree on day one to just send a letter like that, such as it ultimately sent. You mean prior to the litigation? No, I mean as soon as it was filed. After the litigation, shortly after the litigation was filed, Bank of America, in fact, agreed to do that and agreed to pay the plaintiff $5,000. At that time, the plaintiff was asking for $1,000,000. You're right, absolutely. This could have settled early on for exactly what the plaintiff received at the end of one and a half years and $600,000 of interest. Why was the district judge who was sitting there the whole time of the view that, in fact, the Bank of America was litigating in a no-holds-barred fashion, that that wasn't the case? That's what he said, essentially. Your Honor, the district court found, and I don't think unreasonably, that the fees that were expended were reasonable. Where the district court erred was in determining that those fees were reasonably spent to obtain the success. In other words, we're not challenging that there were discovery disputes. We're not challenging that there were other kinds of proceedings that were necessitated in this case. What we're challenging is that if you look at the degree of success which you were required to do, the amount of fees are not justified by the success in the case. And, Your Honors, in four cases, this is not a survey, but in four Ninth Circuit cases, in very similar facts, this Court has found that the amounts were disproportionate, overly disproportionate, to the fees awarded. The awards in the hundreds of thousands of dollars for judgments in the $20,000 range. What is the, what do you believe, in fact, if any, should be given to the agreement that you could appeal if it were more than $225,000 and that your opponent could appeal if it were less? Was that the final agreement?  And is that something that's proper for either party to refer to? Well, I don't think it's improper for either party to refer to it. I'm not certain that it's relevant to this dispute, however. That was just an agreement between the parties with respect to whether the case would be resolved or not. It had nothing to do with what was reasonable or not reasonable with respect to attorney's fees. I don't think it should bear in any way on this Court's resolution of the matter. All right. Thank you. Could I reserve the rest of my time for rebuttal? Well, you're two minutes over. You're minus two for rebuttal. Okay. But we'll give you one minute for rebuttal. Thank you, sir. Good afternoon. May it please the Court, I'm Janelle Welling, and I represent Plaintiff at the League, James Moore. The Honorable District Court in this action, Irma Gonzalez, wrote a textbook opinion on awarding attorney's fees and costs, and it should be affirmed in all respects. She cited the applicable precedent from this Circuit and from the United States Supreme Court. She applied that law to a voluminous record and addressed the contentions that the bank repeats here before you today. She explained her reasoning. She explained her calculation. She declined some Lodestar for being unrelated and unsuccessful. She declined to reimburse certain fees and costs, and she declined an upward adjustment to Lodestar. The end result is a fair and appropriate compensable fee for a successful party in a TILA case. Reading the list of the, not the fee amount, but I mean the $1,000 statutory award, but the other steps, it does have some of the sense of Bank of America agreeing to do what it's doing already. Why is that not the case? It's not the case primarily because the district court found that it was not the case, and there was ample support in the record. Specifically, if you look at the declaration of Tamara Lease, which is the declaration that explains that the bank, what the bank is doing. Go back to what you were saying, not the affidavit, but what did the district court find that you're saying that specifically found that there was a change? The two updates, the bank calls them updates, to their policies occurred after Plaintiff sued, after my law firm got retained and filed the amended complaint asserting the injunctive relief class claim on section 6066A subpart B, and the district court was, it was within her discretion, just as the district court in Wilcox did, to determine that changes made during the course of litigation can be attributed to Plaintiff. That's what I'm trying to find out from you. Where did the district court tell us what the changes were that were made? She discusses in her opinion, and it's found at excerpt of record 960, is a particular page where she discusses the fact that the Plaintiff received the Maximum TILA Award Now that doesn't have to do with changes that were made in the policy. She continues by saying that Plaintiff prevailed on the significant legal issue and discusses that the settlement requires the affidavit that I was referring to, the Tamil lease affidavit that attests that the bank complies as of that date, which is after litigation and after we got involved with section 1666A subpart B, and requires the bank to go even further and help the credit reporting validity that we use in our marketplace by advising consumers to check their credit reports and look for incorrect information. She specifically cites those items of the settlement agreement. She doesn't say that any of them were any different from what the bank was already doing. She doesn't expressly state that, but I don't believe she does have to expressly state that. What she just needs to do is provide a basis for this court to understand her reasoning and her calculations. What she said was Plaintiff's lawsuit focused on B of A's failure to properly report delinquent but disputed charges. It's an indirect way, I suppose, of saying that she thought there was such a failure, but it's certainly not a direct statement that there was such a failure, but it could be read that way. Plus, oddly, it seemed to me that insofar as there's anything that appears to have been a change, it's an agreement to put something into the training materials that wasn't there. She doesn't mention that. She does not mention that. I agree that was, to me, an important part, and I personally negotiated that part of the agreement, and we felt it was important that the training materials be changed, and that is one of the items that our expert below specifically referred to as providing public benefit. What about the damages and the notion that this was the maximum amount under the statute? Where does that come from? Doesn't the statute provide for the possibility of actual damages if there are actual damages? The statute provides for both statutory damages and actual damages. All right. So why does she say that this is the maximum damages available? It isn't the maximum damages available. The dispute was over a $213 part of a $213 plane ticket, and as we discussed in our briefing, under the most serious interest finance charge you could imagine over the course of litigation, there's no way that damage would have exceeded $1,000. Why was this plaintiff seeking $1 million? What did the remaining amount relate to? The basis of the plaintiff's demand that was prior to when my law firm got involved in the litigation was he reasoned that the bank had violated TILA in two respects, and he knew enough to understand that TILA allowed a $500,000 maximum award in a class action for violations, and he reasoned two violations, $1 million. He demanded that it would be sent to a nonprofit fund, not to himself. In any event, when we did get involved and we evaluated and amended the complaint to assert the claims, we specifically focused on the injunctive type relief and not the monetary relief. And one of the areas where the bank criticizes the judge is that the judge did not consider that we didn't get monetary relief for the class. We were never seeking monetary relief for the class. We were seeking just the sort of adjustments to training manuals and changes to how the bank was going about reporting or not reporting. On that theory, yes, you, meaning your law firm, but not you, meaning the plaintiff. Correct. Correct. So, I mean, maybe we would cut off the fee. On that theory, you'd cut off the fees at the point that you came into the suit, but is that what we've done here? So these fees include fees before you came into the suit? There's nothing claimed for before my law firm was involved. Even though the plaintiff spent his own time and money to the tune of about $50,000 fighting the bank before we got involved, there's no compensation for that time. So any lack of success for that period is sort of immaterial because it isn't being charged for. That is certainly our view. And it also raises the question that you asked my opponent about the compared to what question. And I think that really is the interesting legal question that's going on here. And the bank says the compared to what should be the settlement demand. And we submit that that's incorrect. And the Barrios case from, of course, the circuit in 2000 specifically states that a settlement demand cannot be the sole basis for finding that a monetary award is de minimis. And so the bank's urging to take the settlement demand has been rejected already by this court. The bank urges the absolute dollar value. Look at it. It's only $1,000. Well, that's been rejected by this court twice, once in the Fair Housing of Marin case in 2002 and in the Thorn case. The bank also – Were those nominal damages cases? Yes. But this isn't a nominal damage. I mean, it's a damages award. It's not piles of money, but it's not nominal. Our position is it is not de minimis or nominal. It is obviously not the grandest amount. But that is born out of the fact the plaintiff truly wanted to achieve some benefit to the cardholders and was not focused on his own monetary gain, which goes a long way to explaining why he didn't take $5,000 when he could have and instead decided to persist and achieve what he got. The bank can cite to note – What he got is very peculiar. I mean, first of all, he got an affidavit. What good is that to anybody? The affidavit sets forth with specificity the bank's procedures. In fact, when we reviewed their policy – It doesn't promise to continue those procedures. It, in fact, does. And our position – Where is that? The settlement agreement is found at Excerpt of Record 244, and it provides that the bank will provide the affidavit attesting its policies and will continue to comply with TILA. That's part of the agreement. And it's our position – the bank disputes it – but it's our position that we have the ability, this plaintiff has the ability, to continue to enforce that agreement and that no one else need not have to go through all of the blood, sweat, and tears, as the district court put it, as we did. The bank can cite to no factual findings that are clearly erroneous. Could you show me where it says that they will continue these procedures? I see 2.2.5. It says that they should provide an affidavit describing the procedures currently in place, attest to the effective date of the current written policies, which I don't know if it did. Did it attest to the effective date? Yes, it did. That's how we can establish that both, quote, updates occurred after our amended complaint seeking the TILA claim on behalf of the congenital body class. But where does it say that they would continue the policies? I believe it is in that same paragraph. I apologize if it's not in front of me. It's not in there. Thank you. Well, I apologize, Your Honor. I don't have that at the tip of my fingers. As I sit here, stand here. And then the other thing is a promise to put something into a training manual, but then a statement saying there can't be a lawsuit about that. The statement is that it's not for us to decide what typeface and how much description and where in the manual. We're not going to micromanage how the bank best determines. I see. But if they didn't do it at all, then there would be a problem. Correct. And we believe, and the expert also opined, that that is meaningful and that having that information in the training manuals is, in fact, meaningful and will inert the benefit of the cardholders. The district court recognized the bank's, quote, strong opinion that plaintiffs did not achieve anything here. The district court properly rejected that view and provided and stated that the plaintiff achieved an excellent result for himself and for the putative class. That was well within her discretion. She reviewed the same arguments that were being made here. She reviewed a substantial record, and she cannot be said to have abused her discretion in reaching that conclusion. One further note I wanted to make is that much of the authority the bank cites involves monetary awards, if nothing else, that are nominal. And I submit that the two most analogous cases here are the Morales v. City of San Rafael case, which involved a modest award. It wasn't huge, but it was not deemed de minimis, and also achieved some significant public benefit. And also the Barrios case, which, again, that's the case where the coach wanted to coach athletics, and he had a wheelchair and was being prevented from doing so. There, again, the monetary award was not substantial sums. It also wasn't de minimis. But he also achieved an important, significant change in what the Interscholastic Federation was doing. So those two cases where you have something that's not de minimis, plus you have tangible other results, those are the most analogous cases to be evaluating the relief that the plaintiff obtained here. What do you make of the district court's statement that you achieved a substantial public benefit, then with a parenthetical to the declaration of the expert? Is that an adoption of that declaration? I believe that that is where she's citing to... Well, she cites to it, but does that mean she adopts it? She says, third, the litigation achieved a substantial public benefit. Then she doesn't explain it, but she says, declaration of Richard Lefebvre, and then quotes it. The benefits are substantial, but doesn't tell us what it is. But do you read that as an incorporation of the affidavit? I do. I see it as the district court agreeing with the view set forth by the expert and the analysis, and she read that declaration. She understood what was in it, and she was pointing there to where the expert talked about the addition to the training materials, talked about the difficulties that exist in the marketplace if somebody does not have their disputed report reported that way. The expert went through a variety of ways of why this was meaningful, and the district court considered that, was in her discretion to consider that, and, in fact, below, the bank made no challenge to that expert declaration, either on an evidentiary basis or by submitting their own. They only challenge it now on appeal. I think we've inadvertently let you go way over your time. Thank you. Thank you very much. All right. We'll give you two minutes here, Bob. I'll try to get everything I have to say in two minutes. Your Honor, let me ask a question. What about the fact that the affidavit does include effective dates of the latest updates, which are post the institution of litigation? Your Honor, if you look at what the affidavit was supposed to provide, the affidavit was supposed to provide its current policies and the date the current written policy was effective. That current written policy was effective as of a date in 2005. That has nothing to do with or says nothing about what was the policy prior to 2005. In other words, Bank of America presented information that it updated its policies on a regular basis. It also presented evidence that prior to these updates, the bank's policies with respect to billing error disputes was the same as it was in these policies. And, Your Honor, I go back to the point that plaintiff had the burden of establishing that there was a change in policy, and you will find nothing in the record to indicate that there was a change in the policy. There were at least two changes. One of them was that something was added to the training manuals, and the second is that there was an insert put into the consumer. I agree, Your Honor. Those two were definite, specific, and class-wide, not simply related to this individual. Plus, there was some relief with regard to the individual, non-monetary relief. Your Honor, there was some relief with regard to the individual. He got the negative portion of the report off of his credit report. It is true that the bank agreed to quote the statute in its training manual. Once again, there's no evidence that the effect of that statutory language was not already in the training manual. The bank agreed to quote the statutory language. It's a change. It's a substantial change. There's nothing in the record to indicate that it was. Did it agree to report disputed charges as disputed charges? No, Your Honor. It didn't? No, Your Honor. And I'd like to go back for a moment to the trial court's incorporation by reference of the declarations, of the expert's declaration. Your Honor, even if that was the case, if you would look at the expert's declaration, you will find that it is as devoid of reasoning as the trial court's order. Mr. Lefebvre said, if you'll give me just one moment. Mr. Lefebvre said in paragraph 13, the benefits to the individual plaintiff Bank of America cardholders and the public is substantial. That's it. That's the end of paragraph 13, and there are no facts to support that the benefits of the agreement to the public were substantial. And that's what the whole rest of the affidavit said. No, Your Honor. The rest of the affidavit says it's a good thing for consumers if disputed errors are reported. He says in the next paragraph, I have been asked to evaluate the proposed settlement in terms of the significance, and then he goes on purporting to evaluate the proposed settlement. Now, maybe he did it wrong, but that's certainly what he was preparing, purporting to do. He said he was asked to do it, and then, Your Honor, I think this case has some superficial elements to it that you really have to read everything very carefully. If you read the declaration very carefully, you'll find that the next two or three paragraphs have nothing to do with this case or the settlement. They just are little homilies on how good it is to report disputed items to the court. I still don't report disputed items as being disputed items. Your Honor, Bank of America has always reported disputed items. What's involved in this case, Your Honor, is I thought you said there was nothing about disputed items in the All right. So your position is you always reported disputed items. Yes. It's required by the law. In this individual's case. In this individual's case, Your Honor, Bank of America's position is that it did not get the letter from Mr. Moore indicating that he still disputed the item. Now, maybe he sent the letter. Maybe we got it. Maybe we didn't recognize it appropriately. This is one case, an isolated incident. It does not in any way establish a pattern. And, in fact, if you look at the way Mr. Moore's case was handled, you'll see that there's a policy. Bank of America responded on all of the occasions it was supposed to respond to his complaints. There's nothing That was at the end of the lawsuit, not at the beginning. So it's not informative. It's not counter-informative, but it's not informative of what was true at the outset of the litigation. It was prior to the litigation, Your Honor, because he hadn't sued yet. And it shows that if you look at the procedures that Bank of America followed with respect to Mr. Moore, that those procedures are exactly what you're supposed to do under the statutes in play. And that if, in fact, they had received or recognized that they had received a letter further disputing the claim, then Bank of America would have applied its policy and reported the item to the credit reporting agencies as disputed. All right. Thank you, counsel. Thank you very much, Your Honors. Case disargued will be submitted. The Court will stand in recess for a brief period.
judges: Reinhardt, Berzon, Ikuta